**COMMERCIAL BANKERS LIFE INSURANCE COMPANY OF AMERICA, Cambridge Management Corporation, and American Dealers Life Insurance Company of Arizona, Appellants (Plaintiffs Below),**

v.

**David A. SMITH, Appellee (Defendant Below).**

No. 57A03–8702–CV–51.

Court of Appeals of Indiana, Third District.

Dec. 17, 1987.

Rehearing Denied Feb. 2, 1988.

 

Frank E. Spencer, Indianapolis, for appellants.

Christopher C. Myers, Wilks, Kimbrough, and Myers, Fort Wayne, for appellee.

STATON, Judge.

Commercial Bankers appeal a summary judgment decision which held that any covenant not to compete found in the "Employment Agreement" made between Commercial Bankers and Defendant–Appellee David A. Smith was void as a matter of law. The trial court found no geographical or spatial limitations in the document, and, further, if limitations could be inferred from the language, the bounds would be equivalent to the State of Indiana, thus unreasonable, and therefore void.

Commercial's appeal presents the following issues:

I. Was the trial court correct in finding no geographical or spatial limitations in the "Covenant Not to Compete"?

II. If limitations equivalent to the State of Indiana are inferred from the language, was the trial court correct in finding this boundary unreasonable because it is broader than the area of the employee's work?

We affirm.

When reviewing a grant or denial of summary judgment, the Court of Appeals must determine whether there existed any genuine issue of material fact, and whether the trial court correctly applied the law. *Hurst v. Board of Com'rs of Pulaski County* (1983), Ind.App., 446 N.E.2d 347, 349. Summary judgment is not a substitute for trial in determining factual issues, but it is merely a procedure for applying the law to the facts when no controversy exists as to the facts or the inferences to be drawn from the facts. *Marsym Development Corp. v. Winchester Economic Development Com'n* (1983), Ind.App., 447 N.E.2d 1138, 1141–42; *F.W. Means & Co. v. Carstens* (1981), Ind.App., 428 N.E.2d 251, 258.

Historically, courts have not favored restrictive covenants, and have construed covenants not to compete against the party seeking to enforce them. *Harvest Ins. Agency, Inc. v. Inter–Ocean Ins. Co.* (1986), Ind., 492 N.E.2d 686, *College Life Ins. Co. of America v. Austin* (1984), Ind. App., 466 N.E.2d 738, *Licocci v. Cardinal Associates, Inc.* (1983), Ind., 445 N.E.2d 556, *Young v. VanZandt* (1983), Ind.App., 449 N.E.2d 300, *Donahue v. Permacel Tape Corp.* (1955), 234 Ind. 398, 127 N.E.2d 235.

█ Despite this, covenants not to compete are often vital. As stated in *Field v. Alexander & Alexander of Indiana, Inc.* (1987), Ind.App., 503 N.E.2d 627, 634, an employer may employ its representatives "precisely to develop that credibility, and it is in the capacity of employee" that these representatives develop relationships with an employer's customers. Therefore, an employer can "validly contract" to prevent an employee representative "from using that relationship for his own benefit or for the benefit of a competitor." *Id.*

█ The Indiana Supreme Court emphasized in *Donahue* that when testing the validity of a restrictive covenant, the court looks at the entire contract along with the circumstances of that particular case; the standard used is a "Reasonableness" standard. In *4408, Inc. v. Losure* (1978), 175 Ind.App. 658, 373 N.E.2d 899, we phrased the reasonableness standard as follows:

> "It is the interrelation of the considerations of protectible interest, time, space, and proscribed activity that make a particular covenant reasonable or unreasonable. This is true even though in a given case the breadth of a single restriction may appear to dominate the outcome."

*Losure, supra,* at 900, citing *Frederick v. Professional Bldg. Main. Indus., Inc.* (1976), 168 Ind.App. 647, 344 N.E.2d 299.

1. Although Smith contends that he never signed such a document, he admitted doing so only for the purposes of the summary judgment hearing.

2. Paragraph four of the Employment Agreement includes a list of companies excluded from this Employment Agreement between Smith and

## I.

### *Geographical Limitations*

█ Commercial Bankers Life Insurance Company of Indiana, Cambridge Management, and American Dealers Life Insurance Company (henceforth called "Commercial") operate as one company and sell credit life, accident, and health insurance in the State of Indiana, primarily to those in the installment loan business.

Employees of Commercial play a crucial role in obtaining and keeping Commercial's customers, since Commercial communicates with its customers only through its employee representatives, and, conversely, the customers know Commercial only insofar as they know its representatives.

To safeguard its customers and protect its business against competitors, Commercial requires that its employees not compete with Commercial while working for it. This requirement is contained in Commercial's document titled "Employment Agreement," along with a paragraph prohibiting such competition for a period of time after employees no longer work for Commercial.

On June 13, 1983, David A. Smith, a prospective employee "signed" an "Employment Agreement" issued by Commercial.[1] The dispute between Commercial and Smith arises over whether the Employment Agreement's purported covenant not to compete contained the geographical and spatial limitations required for such a covenant to be valid. The following excerpts from the "Employment Agreement" are dispositive.[2]

> WHEREAS, the Company is desirous of entering into an Employment Agreement with Dave whereby he will be responsible for the sales and marketing effort of the Company, and
>
> WHEREAS, Dave is desirous of serving in said capacity upon the terms and conditions hereinafter set forth.

Commercial. Smith had been servicing these companies prior to obtaining employment with Commercial, and it was agreed that Smith could continue to service these while working for Commercial.

NOW, THEREFORE, in consideration of the mutual covenants and agreements hereinafter contained, the parties do hereby agree as follows:

1. The Company hereby appoints Dave as Vice President in Charge of Sales and Marketing in accordance with the job description attached hereto and made a part hereof and marked *Exhibit "A"*.

2. Dave hereby accepts his appointment and agrees to carry out his duties as set forth in *Exhibit "A"* and to perform such other services as may from time to time be requested by the Executive Committee.

\*   \*   \*   \*   \*   \*

4. During the term of his employment with the Company, Dave shall not engage his time or attention or be interested, directly or indirectly, in any other business venture, nor engage in a general business or acquire any interest, directly or indirectly, in any other firm, partnership or corporation in competition with the Company. However, investments in listed securities which do not interfere with Dave's performance hereunder are not prohibited by this covenant.

Excluded from the above are the following accounts Dave is currently servicing as a general agent: The First National Bank of Logansport, Mike Anderson Pontiac, Burger Chevrolet, Hendricksen Chrysler/Plymouth, all of Logansport; Maxton Motors, Butler; Whitley County Motor Sales, Columbia City; Crumback Symons, New Haven; and The Peru Trust Company, Peru.

5. It is anticipated that Dave and the Company will enjoy a mutually advantageous and profitable relationship for many years, but should this relationship be terminated, Dave agrees that as a condition of employment as Vice President in charge of Sales and Marketing of the Company and in consideration of the Company's other covenants and agreements herein contained, that for a term equal to his length of employment as Vice President in Charge of Sales and Marketing of the Company or in any other future capacity, but in no case less than one (1) year or more than three (3) years immediately after the termination of his employment with the Company he will not, directly or indirectly, compete with the Company *within the areas of his responsibilities* by performing services for any other concern which is in competition with the Company, whereby such competition in the opinion of the Company would be injurious to the Company.... (Emphases added.)

Record p. 13, 11. 7–19, 29–42; p. 14, 11. 1–9.

Commercial argues that the phrase "within the area of his responsibilities," taken together with the outline of those responsibilities as found in "Exhibit A," adequately defines the area which would be covered under the Covenant Not to Compete. We disagree.

"Exhibit A" is titled "Sales and Marketing Job Description." However, even if this document is incorporated into the Employment Agreement, no geographical area is defined. According to Commercial, some of the phrases in "Exhibit A" which may inject a geographical meaning into the Employment Agreement's phrase "within the areas of his responsibilities" are the subsections which follow:

*SERVICE:* Establish a friendly working relationship with existing creditor-agents by systemically [sic] calling on all accounts.

(a) Divide the State of Indiana into convenient zones to permit making the greatest number of calls with the least number of miles driven.

\*   \*   \*   \*   \*   \*

*NEW ACCOUNTS:* Utilizing referrals from existing accounts and members of the Board of Directors, make at least one contact with a prospective creditor-agent in each city in which the service call was made.

Record p. 15, 11. 4–5, 19–20.

Given that we cannot rewrite a contract, we find that the would-be covenant not to compete contains no geographical or spatial

limitations. We find no terms in Exhibit A which, along with the phrase "within the areas of his responsibilities," define a geographical boundary.

Commercial erroneously assumes that customer locations should be plotted out to define a geographical boundary. For instance, Commercial unsuccessfully insists that the following section of Exhibit A reveals the geographical or spatial limitation:

*SERVICE:*

    *     *     *     *     *     *

(d) After initial visit, schedule a follow-up call at least once a month when possible. Maintain a file for each creditor-agent with check list inside and any correspondence concerning said creditor-agent. Joan will see that a copy of all correspondence is made for that file.

Record p. 15, 11. 4, 10–11. Contrary to Commercial's claim, this is not a geographical limitation.

If Commercial makes its claim in reliance on the theory found in *Field*, its reliance is misplaced. In *Field*, we stated:

Although one method of limiting a covenant's scope is to impose territorial boundaries, "as the specificity of limitation regarding the class of person [sic] with whom contact is prohibited increases, the need for limitation expressed in territorial terms decreases." *Seach v. Richards, Dieterle & Co.* (1982), Ind. App., 439 N.E.2d 208, 213.

    *     *     *     *     *     *

Here, the class of persons with whom contact is prohibited is customers with whom Field [the employee] had contact within two years of leaving Alexander [his employer]. This class is as well defined and specific as that in *Seach,* and it is similarly enforceable without geographic limitation.

*Field, supra,* 503 N.E.2d at 635. The Court in *Field* argued that a group with which contact was prohibited could *replace* the geographical term, *if* the group was specifically defined. However, reference to the group and specificity of that limited class is crucial. Yet, neither a limited de-

fined class nor its required accompanying specificity occurs in the agreement between Smith and Commercial.

Further, although we held that a specific class could wholly replace the geographical term, we did not state that the class could be used to *define* a geographical boundary. The two terms are distinct. Either a defined, geographical boundary must exist in the covenant, or a specific limited class of persons must be listed as those with whom contact is prohibited; references of one cannot be used to define the other.

Commercial asks us to locate a geographical boundary in the Covenant by using a customer list to define a geographical area. This we cannot do. Accordingly, no geographical or spatial limitations exist. We cannot and will not create them.

## II.

### *Reasonableness of Inferred Boundary*

■ Commercial's second argument is that the trial court erred in finding that even if one inferred that the boundary in the contract is the State of Indiana, such a boundary is unenforceable because it is unreasonable.

As the trial court held, this area is unreasonable because it extends beyond the area in which Smith actually worked. In the line of Indiana cases dealing with restrictive covenants, specifically covenants not to compete, a distinction exists between the area in which the employee actually works and the area which comprises the full extent of the Company's business. For example, in *Frederick* the court found the covenant not to compete unreasonable because "[t]he geographic area of restriction was more broad than the area in which he [the employee] worked." *Frederick, supra,* 344 N.E.2d at 302.

In *Losure,* we clarified *Frederick* by stating that the covenant not to compete in *Frederick* was invalid because it was not established that Frederick worked in all of the counties listed in that Covenant. *Losure, supra,* 373 N.E.2d at 902. We also noted that Indiana courts do not enforce "covenants not to compete which are not limited in their scope to the geographic

area in which the employee has worked." *Id.*

In *Losure,* the covenant in question stated that the employee could not compete with his employer "only in the areas of his past, present, and future employment...." *Losure, supra,* 373 N.E.2d at 902. We then noted that:

> Protection of the business of 4408, Inc. and its good will requires an agreement which would encompass *only those areas in which Losure had customer contact.* The agreement in question was drafted in a way in which its *scope would never exceed the employee's area of work,* and the term was reasonable in light of the interest sought to be protected. (Emphases added.)

*Id.*

Similarly, in *Waterfield Mortg. Co., Inc. v. O'Connor* (1977), 172 Ind.App. 673, 361 N.E.2d 924, a case decided one year prior to *Losure,* we stated succinctly the requirement that the prohibited area not exceed the area in which the employee worked.

> [W]here an employee is *not privy to confidential information,* a covenant restricting his employment *beyond the area of his former employment is unreasonable.* However, if an employee obtained confidential information, he may be restricted in the competitive use and disclosure of such information to the full extent of the employer's business which is thereby affected. (Emphases added.)

*Waterfield, supra,* 361 N.E.2d at 927.

In this case, the briefs do not dispute the areas in which Smith worked nor the extent of Commercial's business. By the terms of Commercial's own documents, it is apparent that the full extent of Commercial's business was the State of Indiana.[3] Testimony indicated that Smith was responsible for representing primarily the Northern half of Indiana, but *could* be called upon to handle situations in the southern half as well.[4] Without even addressing whether or not Smith covered every part of *Northern* Indiana, nothing indicates that Smith worked in every area of the *State* of Indiana. Thus, it is clear that the extent of Commercial's business was broader than the area in which Smith worked. Therefore, even if we could infer that the language of the contract contains a boundary equivalent to the State of Indiana, that area is broader in scope than the area of Smith's work and is unreasonable as a matter of law, thus rendering the contract unenforceable.

Thus, on both counts, we are bound to affirm the trial court's Summary Judgment decision in favor of Smith.

Affirmed.

HOFFMAN and CONOVER, JJ., concur.

---

3. Exhibit A reads:
   "*SERVICE:* Establish a friendly working relationship with existing creditor-agents by systemically [sic] calling on all accounts.
   (a) Divide the *State of Indiana* into convenience zones to permit making the greatest number of calls with the least number of miles driven." (Emphasis added.)
   Record p. 15, 11. 4–5.

4. Record p. 107, 11. 7–14; p. 128, 11. 6–15.