Cynthia HAHN, Michael Parks and Hahn, Parks & Co., Appellants–Defendants,

v.

DREES, PERUGINI & CO., Appellee–Plaintiff.

No. 49A02–9011–CV–00649.

Court of Appeals of Indiana, Second District.

Nov. 21, 1991.

Jan J. Kinzie, Cline, Owen & Kinzie, Indianapolis, for appellants-defendants.

Jeffrey O. Meunier and James D. Crum, Coots, Henke & Wheeler, Carmel, for appellee-plaintiff.

SULLIVAN, Judge.

Cynthia Hahn (Hahn), Michael Parks (Parks), and Hahn, Parks & Co. (Hahn & Parks) appeal from the trial court's injunction judgment enforcing a covenant not to compete in favor of Drees, Perugini & Co. (Drees); Drees cross-appeals the trial court's denial of its claim for monetary damages.

We affirm in part, reverse in part, and remand for further proceedings.

Appellants and Cross–Appellant present several issues for our review, which we restate as follows:

I.   Whether the covenant not to compete contained in Hahn and Parks's employment contracts was impermissibly in restraint of trade and thus unenforceable; and

II.   Whether the trial court erred in failing to award damages to Drees?

The facts most favorable to the decision of the trial court are as follows. Bradley K. Kristel, Inc. (Kristel Inc.) was a company, the business activities of which included conducting audits of credit unions. Kristel Inc. hired Parks in July of 1984, and hired Hahn in September of 1985. Both were hired to perform audits of credit unions. At the time of their respective hirings, both Parks and Hahn signed identical covenants not to compete, which read as follows:

"In consideration of the employee's employment by the employer, the employee agrees that he/she will not perform any work in any manner for any fee whatsoever, for any client of the employer. The employee also agrees that he/she will not be a party with any individual, group of individuals, or firm, in any capacity whatsoever, that will perform any work in any manner for any fee whatsoever, for any client of the employer.

A client shall be any individual, firm, or credit union from whom the employer has received a fee for services performed within a three (3) year period prior to the date of the employee's employment thru and including the date of the employee's termination. The term of this agreement will be from the date of employment through the third anniversary year of the employee's termination date of employment with the employer.

Any violation of this agreement by the employee will entitle the employer to compensation equaling three (3) times the employers [sic] highest annual fee received from the client during the three (3) most recent calendar years, and/or the current year." Record at 22, 435.

In November of 1988, Parks terminated his employment with Kristel. Hahn terminated her employment in December of 1988.

In early 1989, Hahn and Parks started their own company which was engaged in the business of auditing credit unions. In July of 1989, Kristel Inc.'s credit union auditing assets, including customer lists and the aforementioned covenants not to compete, were sold to Drees. Drees learned that Hahn & Parks had been serving certain credit unions in apparent contravention of the terms of the covenants not to compete. Accordingly, Drees filed suit seeking to enforce the restrictive covenants and to collect money damages pursuant to the covenants' liquidated damages clause. The instant appeals challenge the trial court's decisions to uphold the covenants and to deny damages.

### I.   *Covenant Not to Compete*

Covenants such as those at issue here are not favored in the law because they are in restraint of trade. Our courts have long required that, to be enforceable, such covenants must be reasonable with respect to the covenantor, the covenantee, and the public interest. The ultimate determination whether a covenant not to compete is reasonable is a question of law for the court to decide. *Donahue v. Permacel Tape Corp.* (1955) 234 Ind. 398, 127 N.E.2d 235. Whether a particular covenant is reasonable depends upon the facts and circumstances of the particular case. *Licocci v. Cardinal Associates, Inc.* (1983) Ind., 445 N.E.2d 556; *American Shippers Supply Co. v. Campbell* (1983) 2d Dist.Ind.App., 456 N.E.2d 1040, 1043.

In *Slisz v. Munzenreider Corp.* (1980) 4th Dist.Ind.App., 411 N.E.2d 700, 704, our Fourth District clearly defined the focus of our inquiry in such cases. The employer must demonstrate that the former employee has gained a unique competitive advantage or ability to harm the employer before such employer is entitled to the protection of a noncompetition covenant. Therefore, the burden is upon Drees to show that the covenants not to compete are reasonable and necessary in light of the circumstances. *Licocci, supra,* 445 N.E.2d at 561.

We note initially that Kristel Inc. (and now Drees) was entitled to protect the "good will" of its business, which includes such things as "names and addresses and requirements of customers and the advantage acquired through representative contact...." *Donahue, supra,* 127 N.E.2d at 240. Included also in Kristel Inc.'s protectable good will interest is the right, via a proper covenant not to compete, to restrict a former employee from enticing away the employer's old customers. *Id.* at 241; *see also Licocci, supra,* 445 N.E.2d at 563.

The covenants in question forbid Hahn & Parks from contacting any credit union from which Kristel Inc. had received a fee in the three-year period immediately preceding the date that Parks began working for Kristel Inc., through and including the dates of termination of Hahn's employment.[1] The period of restraint was designated to end three years after the date of termination. Hahn & Parks complains that the restriction is unreasonable because it would restrain the company, at some point in time, from dealing with a credit union with which neither Hahn nor Parks ever had any contact, and which had not been a customer of Kristel Inc.'s for ten years.[2] The most troublesome portion of the covenant is the restriction it places upon Hahn & Parks relative to credit unions which had no contact with Kristel Inc. during the time that they were employed there. Such clients are normally called "past" clients.[3]

Drees seeks to save the covenant in question by asserting that clients that they have not audited for three years are none-theless "present" clients because of the nature of the business. The only portions of the record which can be said to support this claim are found in the cross-examination of Bradley Kristel. Hahn & Parks's counsel questioned Mr. Kristel regarding a list of clients which Drees contended contained the names of credit unions which the covenant prohibited Hahn & Parks from servicing. In response to a question inquiring whether the list contained the names of credit unions which had decided they would no longer do business with Kristel, Inc., Mr. Kristel responded:

"Okay. Normally, the ... normally, the credit union clients are not going to call you up and say I'm going someplace else. We simply don't get the job back. *There are clients that we would do one year and don't do the next year and do the following year. The clients rotate their auditing.*" (Emphasis added.) Record at 173.

This excerpt lends scant support, if any, to the argument that a three-year period is reasonable and necessary based upon practices peculiar to the business of auditing credit unions. Moreover, any weight which the court may have accorded to this testimony was removed by the following testimony upon cross-examination of William Wysocki, a certified public accountant and an employee of Drees.

"Q.     And [obtaining credit union clients] is a bid process where each year you put out a bid.

A.     [Wysocki] While you submit a bid, it isn't ... some ... some years are ...

---

1. Because the dates of restriction contained in their individual covenants similarly restrained any firm for which Hahn and Parks worked, the beginning date restriction (contained in the second paragraph of the covenant) for Hahn & Parks is calculated from the date of hiring of Parks, who was hired first. The ending date restriction (contained in the third paragraph of the covenant) is calculated from the date of termination of Hahn, who was terminated last.

2. Parks accepted employment with Kristel Inc. in July of 1984. Pursuant to the covenant, Hahn & Parks is restricted from serving a customer of Kristel Inc., even though said customer was last served by Kristel Inc. in July of 1981. This restriction would run until three years after the termination of Hahn's employment with

Kristel Inc., which would be in December of 1991. Under this scenario, Hahn & Parks will be restrained from serving a customer in December of 1991 even though said customer had not been served by Kristel Inc. since July of 1981, a period of over ten years.

3. For purposes of this opinion, and generally, a "present" client is a client that did business with Kristel Inc. *during* Hahn's and/or Parks's employment; a "past" client is one that did business with Kristel Inc. *before, but not during,* the time that either Hahn or Parks were employed there; a "prospective" client is one whose business contacts with Kristel Inc. occurred only *after* both Hahn and Parks had terminated their employment.

some ... some clients just ask for a letter stating what your proposed ... proposal is. It isn't always a competitive bid. Other times, we don't know whether or not a credit union is seeking other bids or not. It's strictly a ... submit a proposal. There may be one, two or no bids involved.

Q.    *Is it industry practice among many of the credit unions for their supervisory boards to seek another auditing firm on a periodic basis so that the individuals auditing that particular credit union don't become too familiar with that particular company so they can have a fresh look every two or three years?*

A.    *They will change for that reason.*

Q.    *How common is that in the industry among credit unions particularly?*

A.    *I ... I can't say. I can't answer that.*"

(Emphasis supplied.)    Record at 199.

The scant evidence offered by Drees simply is insufficient to sustain the burden of proof on this issue. Therefore, absent meaningful proof to the contrary, we determine that the covenant seeks, in part, to restrain Hahn & Parks from doing business with Kristel, Inc.'s past clients.

Drees cites *Seach v. Richards, Dieterle & Co.* (1982) 2d Dist.Ind.App., 439 N.E.2d 208, in support of its argument that covenants not to compete may properly prohibit an ex-employee from doing business with the ex-employer's past clients. Although *Seach* may arguably be understood to cre-

ate a narrow exception to the general prohibition against restricting contact with an ex-employer's past clients, that exception is not applicable here.[4] Upon a close reading, it is apparent that, rather than treating favorably the propriety of restricting contact with past clients, *Seach* is critical of the practice. The court quoted with approval the following passage from *Servomation Mathias, Inc v. Englert* (1971) M.D.Pa., 333 F.Supp. 9, 14:

> "[When an ex-employee is restrained] from serving a former client of his ex-employer with whom he had *no contact* during the term of his employment, the reasonableness of the restraint as a device for protection of customer relationships is highly questionable." (Emphasis in original.)    *Seach, supra*, 439 N.E.2d at 213–14.

We share the *Seach* court's skepticism of the practice of restraining former employees from doing business with past customers of their ex-employers. *Accord Donahue, supra*, 127 N.E.2d at 239 ("covenant restricting the employee from competing with portions of the business with which he was never associated is invalid"). Moreover, in the instant case there is insufficient proof that the restriction is reasonable and necessary. Therefore, the restraint is overbroad and thus invalid as an unreasonable restriction of Hahn & Parks's economic freedom.

■    Drees contends that, in the event that the restriction is invalid with regard to past clients, this court may nonetheless uphold the remainder of the covenant by striking out the offensive portion and leaving the remaining provisions intact, a process which has been termed "blue pencill-

---

4.    The *Seach* court stated:

"Such a limitation [regarding when past clients with whom contact is prohibited may have been customers of the employer] *might* take the form of proscribing contact with customers who have done business with the employer within one year prior to the employee's termination of employment. [citation omitted] Any limitation would necessarily have to reflect the nature of the business involved in setting what is a reasonable time limit, and would also have to be formulated to protect and accommodate the valuable interests of the employer, such as customer lists and in-house knowledge." 439 N.E.2d at 214 n. 4.

The above passage suggests that a covenant not to compete might be acceptable if the time limit placed upon the ex-employer's contact with the client commences to run not longer than one year prior to the ex-employee's *termination.* This definition necessarily means that if an ex-employee was employed for more than one year, the covenant would be inapplicable to a client that had not been in contact with the business during the time of employment; that is, it would not pertain to a "past" client. Hence, the exception alluded to in the *Seach* footnote would include past clients only when the employee has been employed for less than one year. Hahn and Parks were employed for three and four years, respectively.

ing." *Seach, supra,* 439 N.E.2d at 214–15. Hahn & Parks contends that the instant covenant is not susceptible to blue pencilling because its terms are not severable. In essence, they argue that the invalidity of any portion of the covenant invalidates the entire covenant.

◼ In Indiana, a court may not craft a reasonable restriction out of an unreasonable one under the guise of interpretation. *Licocci, supra,* 445 N.E.2d at 561. However, if a covenant is clearly separated into parts, some of which are reasonable and some of which are not, the covenant may be divided. In such cases unreasonable provisions are stricken, and reasonable provisions are enforced. *Id.* In *Seach,* the covenant restricted the former employee from contacting "present, past, and prospective" clients.[5] *Seach, supra,* 439 N.E.2d at 213. The court held that the contract was enforceable to the extent of the prohibition against "present" clients, but that the restraint against "past" and "prospective" clients was impermissible. The court further held that the offensive portions of the contract were severable in terms. Thus, the contract was divisible, and proper restrictions contained in the contract were enforceable. Hahn & Parks contends that the offensive restriction here is not severable because it "cannot be corrected by the mere deletion of a few words." Brief of Appellant at 11. We disagree.

◼ It is clear that court redaction of a contract may not result in the addition of terms that were not originally part of the contract. *Seach, supra,* at 215. Blue pencilling, then, must be restricted to applying terms which already clearly exist in the contract. In the instant case, the covenant sought to restrain Hahn & Parks from dealing with any credit union which had paid fees to Kristel Inc. for services performed during a period of time extending from three years before Hahn and Parks began working until the date of their termination. Although not couched in the terms "past" and "present," the covenant undeniably sought to restrain Hahn and Parks from dealing with "past" and "present" clients of Kristel Inc. We reject the notion that, in the context of the blue pencil doctrine, "clearly separated into parts" necessarily requires a formalistic listing of the individual components of an agreement, using specific terms of art. This is especially so when, as here, the several restrictions contained in a particular clause are plain and unmistakable. In finding the instant contract amenable to court redaction, we neither rewrite the existing agreement nor add a term not heretofore contained in the contract. Indeed, even under the more formalistic rule advocated by Hahn & Parks, the offensive restriction pertaining to "past" clients contained in the covenant now before us may be surgically removed by deleting from the contract the words "within a three (3) year period prior to"; all that remains is to add the word "from" for the simple purpose of making the clause grammatically correct. The result—"A client shall be any individual, firm, or credit union from whom the employer has received a fee for services performed from the date of the employee's employment thru and including the date of the employee's termination"—is an enforceable restriction against dealing with Kristel Inc.'s "present" clients.

In summary, we hold that the contract is susceptible to the blue pencil process and that it is enforceable to the extent that it restrains Hahn & Parks from dealing with "present" clients of Kristel Inc., as that term is herein defined.

## II. *Cross–Appeal on Damages*

◼ The assessment of damages is within the trial court's discretion and we

---

**5.** The relevant portion of the covenants not to compete read as follows:

"2. Non–Competition. In accordance with this employment, the Employee agrees not to compete with the Firm as hereinafter defined. ... b) The Employee, therefore, agrees that if for any reason, the Employee's employment with the Firm terminates for a period of three (3) years thereafter the Employee will not:

1) Contact, advise, visit or in any way solicit directly or indirectly any *present[,] past or prospective client* (prospective client defined as a person or business previously contacted at least once) of the Firm;" *Seach, supra,* 439 N.E.2d at 213.

will reverse only for an abuse of discretion. *Smith v. Glesing* (1969) 145 Ind.App. 11, 248 N.E.2d 366. A liquidated damages provision will be enforced only if the sum stipulated to in the contract constitutes damages, and not a penalty. *Nylen v. Park Doral Apartments* (1989) 3d Dist. Ind.App., 535 N.E.2d 178, 184, *trans. denied.* The question whether a liquidated damages clause is valid, or whether it constitutes a penalty, is a question of law for the court. *Id.* When making this determination, we examine the facts, the parties' intentions, and the reasonableness of the stipulation under the circumstances of the case. *Id.*

■ The liquidated damages provision here requires that Hahn & Parks pay to Drees three times the amount of any fees it receives as a result of breaching the covenants not to compete. In *Seach, supra,* we held that a similar liquidated damages clause inflicted a penalty and thus was unenforceable. The *Seach* holding was partially premised upon a finding that the clause defining the prohibited activity (i.e., "contact, advise, visit or in any way solicit directly or indirectly any client") would mandate the same penalty for actions which in fact result in no harm to the ex-employer, as it would for actions which actually result in harm. *Seach, supra,* 439 N.E.2d at 216. For instance, the same damages would result from merely contacting a client as would result from actually advising the client. Such overbroad prohibitions, known as "shotgun clauses," are treated as penalties in Indiana. *Id.* The clause in the instant case is a "shotgun clause," and thus a penalty clause, because it assesses treble damages for *any* contact with "present" clients, regardless whether the contact is harmful to the ex-employer. Moreover, our decision in this respect is fully supportable upon the ground that the treble damages exacted by the covenants bear no reasonable relationship to the amount of damages incurred by Drees in the event of breach. The treble damages clause clearly would impose a penalty, and is thus unenforceable.

■ However, the invalidity of the liquidated damages clause does not extinguish Drees's claim for damages. Lost profits is an acceptable measure of damages in actions involving violations of covenants not to compete. *See, e.g., Lawrence v. Cain* (1969) 144 Ind.App. 210, 245 N.E.2d 663, 668. Therefore, Drees may recover in damages an amount equal to the fees received by Hahn & Parks from credit unions which were "present" clients of Kristel Inc.

This cause is remanded to the trial court with instructions to determine which clients were "present" clients, as defined in footnote 2, *supra,* to determine the amount of fees received, if any, from those "present" clients in breach of the covenants not to compete, and to order Hahn & Parks to pay damages in that amount to Drees.

Affirmed in part, reversed in part, and remanded for further proceedings.

SHIELDS and MILLER, JJ., concur.