**RIDGEFIELD PARK TRANSPORT,**
Plaintiff,

v.

**William L. UHL and R & W Corporation, Defendants.**

**No. NA 89–180–C.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

Oct. 15, 1992.

Ruby D. Fenton, Rogers Fuller & Pitt, Louisville, Ky., for plaintiff.

Barry N. Bitzegaio, Lorch & Naville, New Albany, Ind., for defendants.

## ENTRY

BARKER, District Judge.

The parties to this action dispute whether the R & W Corporation ("R & W"), formerly Able Trucking, Inc., and William L. Uhl (the "Defendant") (collectively the "Defendants") have violated the provisions of an agreement which the Defendants entered into pursuant to the sale of a part of

R & W to the Plaintiff. Both sides have moved for summary judgment on Count I of the Complaint. For the reasons set forth below, the Defendants' motion is granted, and the Plaintiff's motion is denied.

## BACKGROUND

Both R & W and Plaintiff are trucking firms. On May 1, 1989, Plaintiff and the Defendants entered into an agreement (the "Agreement") which provided that the Defendants would sell to Plaintiff all goodwill associated with or related to R & W's business, its trade name, customer list, and operating permits. The Defendants also entered into a covenant not compete with Plaintiff which provides in pertinent part:

> *Covenant Not to Compete, Non–Disclosure of Information and Solicitation.* [R & W] and Uhl agree that, for a period of five (5) years following the closing, neither Seller nor Uhl shall:
>
> (1) directly or indirectly, own, manage, operate, join, have an interest in, control or participate in the ownership, management, operation or control of, or act as a consultant to, or sales representative or broker for, or be employed by, or otherwise be connected in any manner with, or have any direct or indirect financial interest, including, without limitation, an interest as a creditor, in any form of business competing directly or indirectly with [Ridgefield] in the business of trucking in the United States;

Plaintiff's Exhibit 1, section 5(b)(1), at 6–7. In consideration for R & W's goodwill and the covenant not to compete, Plaintiff paid Uhl $20,000 and $30,000 respectively. The Agreement was closed on May 13, 1989.[1]

Shortly after the Agreement went into effect, R & W and Uhl leased seven (7) truck tractors to Bob Satterfield ("Satterfield"), who had been a truck driver for R & W before transferring to Plaintiff. Satterfield allegedly resigned his employment from Plaintiff to operate his own trucking firm once the Defendants agreed to lease

him trucks. Complaint, at ¶ 14. Plaintiff believes that Satterfield's operations compete with it, and that "R & W's and Uhl's leasing of truck tractors to Bob Satterfield [violated the] restrictive covenant [and] has substantially diluted and impaired the value of the goodwill purchased by [Plaintiff] and resulted in lost revenues and lost profits for [Plaintiff]." Complaint, at ¶ 17.

Plaintiff filed its Complaint on October 2, 1989, and a motion for injunctive relief on November 16, 1989. This Court conducted hearings on Plaintiff's motion on November 18, 1989, and December 29, 1989. In its ruling, the Court found that section 5(b)(1) is unreasonable as a matter of law, and that its terms are not severable. The Court declined to enter an injunction based on that provision, although it did so for section 5(b)(2) of the Agreement, which forbids the Defendants from "entic[ing] or induc[ing], directly or indirectly, any employee of [Plaintiff] to leave the employ of [Plaintiff] to work with [R & W], Uhl or any other person with whom [R & W] or Uhl is or becomes affiliated." Plaintiff's Exhibit 1, section 5(b)(2), at 7. This entry only addresses the motions for summary judgment.

## DISCUSSION

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.Proc. 56(c). In passing on a motion for summary judgment, the judge's role is not to evaluate the weight of the evidence or determine the truth of the matter, but it is instead to decide whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Summary judgment is especially appropriate where the issues in dispute

---

1. Even though the parties have disputes concerning other sections of the Agreement, the Court limits its attention to section 5(b)(1) because it is the exclusive focus of the motions for summary judgment.

are purely legal. *See, e.g., American Jewish Congress v. City of Chicago*, 827 F.2d 120, 123 (7th Cir.1987). In these circumstances, the need for trial is avoided because there are no genuine issues of material fact that must be resolved.

Defendants argue that summary judgment should be entered in their favor on Count I because section 5(b)(1) is unreasonable as a matter of law. Plaintiff argues to the contrary, and, in the alternative, that the Court should sever any unreasonable restrictions within section 5(b)(1) rather than reject it in its entirety.

■ The Court begins its analysis by noting that covenants not to compete are not favored by the law. *See Licocci v. Cardinal Assoc., Inc.*, 445 N.E.2d 556, 561 (Ind.1983). The reason for this is not difficult to fathom; they impede trade and distort the market mechanism which allows our economy to function. Covenants not to compete consequently are strictly construed against the party seeking to enforce them. *See Donahue v. Permacel Tape Corp.*, 234 Ind. 398, 127 N.E.2d 235, 237 (1955). They are not per se unlawful, however, and will be enforced if they are reasonable, *see id.*, 234 Ind. at 408, 127 N.E.2d at 239, which is a determination made by the court. *See Ross Clinic, Inc., v. Tabion*, 419 N.E.2d 219, 221 (Ind.App. 3 Dist. 1981).

■ Courts in Indiana apply a three pronged test to evaluate whether a covenant not to compete ancillary to the sale of a business is overbroad, and hence unreasonable: (1) whether the covenant is broader than necessary for the protection of the covenantee in some legitimate interest; (2) the effect of the covenant upon the covenantor; and (3) the effect of the covenant upon the public interest. *See Fogle v. Shah*, 539 N.E.2d 500, 503 (Ind.App. 4 Dist. 1989). If the covenant founders on any of these prongs, it is unreasonable as a matter of law.

■ The Court finds that section 5(b)(1) of the Agreement fails the first prong of the *Fogle* test because it is broader than necessary to protect Plaintiff.[2] Whether a covenant is overly broad depends on the space, time, and activity restricted. *See id.; Commercial Bankers Life Ins. Co. v. Smith*, 516 N.E.2d 110, 112 (Ind.App. 3 Dist.1987). The factor which defines the reasonableness of these elements is the goodwill that the covenantor sold. *See McCart v. H & R Block*, 470 N.E.2d 756, 763 (Ind.App. 3 Dist.1984). As the Indiana Supreme Court explained after reviewing the relevant case law on the permissible scope of covenants that restrain trade:

> It must be noted that these cases relate to the good will, which is "the interest to be protected" in the business or profession *sold*, and they do not relate to the scope of the business of the buyer. For example, if the seller operated stores in cities A, B and C, and he sells the store in city A, the cases do not hold that a negative covenant may be enforced prohibiting seller from continuing business in cities B and C, neither do they hold that the mere fact that the *buyer* operates a business throughout the state of Indiana that he may preclude a seller whose business was limited to a single county, from operating elsewhere within the State of Indiana. In fact the contrary rule is true. (citation omitted). *The "good will" must be related to the particular transaction between the parties.*

*Id.* (emphasis added). The Court's inquiry consequently must focus on the goodwill that the Defendants sold to Plaintiff, and whether it was sufficient to justify preventing them from competing against the Plaintiff, directly or indirectly, throughout the entire United States for five years.

■ Plaintiff paid the Defendants a total of $50,000 for the covenant not to compete and the firm's goodwill. *See* Agreement section 14(b). While the trucking operation which the Plaintiff purchased had permits to operate in forty-eight states, the record

---

2. Of course this finding does not resolve the issue whether the Defendants have been unjustly enriched. Plaintiffs paid $50,000 for the covenant not to compete and R & W's goodwill.

*See, e.g., Original Appalachian Artworks, Inc. v. Schlaifer Nance & Co.*, 679 F.Supp. 1564, 1576–77 (N.D.Ga.1987).

indicates that R & W was primarily a regional shipper that operated out of a terminal in Southern Indiana. Although the Defendants at times hauled freight across the United States, this activity was sporadic; its business consisted primarily of serving a handful of major clients over established routes. Plaintiff in essence admitted this conclusion and that the covenant was overbroad during cross-examination when he stated that he would not consider it a violation of the Agreement for the Defendants to "continue[ ] the same operation" out of a different geographic base, such as Kansas City. *See* Hearing Transcript, vol. II, at 83–84.

Section 5(b)(1) of the Agreement, though, prevents the Defendants from competing, directly *or indirectly,* anywhere in the United States. The activity that it seeks to prohibit is far more encompassing than is necessary to protect the Plaintiff's interests, because it amounts to nothing less than a total prohibition on the Defendants' entry into any trucking market in the United States. These interests, which flow from the goodwill that was exchanged, were established at the time R & W was sold because it was the nature of R & W itself which defined them.

> When a person sells a business to another, the seller often will agree not to compete with the buyer for a certain period of time within a certain area. Such agreements reflect the value of the customers' affiliation with the particular business which is part of the bargain sought by the buyer. This 'goodwill' is the protectible interest upon which the covenant not to compete focuses.

*McCart,* 470 N.E.2d at 763. All parties were aware at the time of sale that R & W was not a national concern and that it did not preside over an elaborate shipping network. This was implicit in R & W's design: it had but one hub and a small number of tractors. The Agreement, however, constrains the Defendants in a way that contemplates a far different organization—one which has its own developed markets coast to coast and a shipping infrastructure to support them. Nothing in the record supports such a finding. The Court consequently must conclude that the scope of the restraint diverges sharply from the goodwill that was sold to Plaintiff, and is unreasonable as a matter of law.

■ Because the covenant not to compete fails the first prong of the *Fogle* test, the Court need not examine the other two prongs. The only issue that remains to be addressed, then, is whether section 5(b)(1) can be severed. "[I]f the covenant is clearly separated into parts and some parts are reasonable and others are not, the contract may be held divisible." *Licocci,* 445 N.E.2d at 561. The Court is unable to sever section 5(b)(1), however, because it is not clearly separated into parts. Its language is a seamless web of conditions, the modification of which would result in a completely different agreement. Obviously, the Court is without authority to rewrite the covenant as this would subject the parties to an agreement that lacked their mutual assent. It must remain as written, which means that it must fall altogether.

## CONCLUSION

Because section 5(b)(1) of the Agreement is unreasonable as a matter of law, the Defendants motion for summary judgment on Count I of the Complaint is granted, and the Plaintiff's motion for summary judgment on Count I is denied, and Count I of the Complaint is hereby dismissed.

It is so ORDERED.