**SMART CORPORATION,**
Appellant–Defendant,

v.

**Kathy GRIDER, Appellee–Plaintiff,**

and

**Midwest Medical Copy Service, Inc., Appellee (Third Party Defendant).**

No. 49A02–9412–CV–746.

Court of Appeals of Indiana, First District.

May 19, 1995.

Rehearing Denied July 27, 1995.

---

Robert D. Macgill, Andrew J. Detherage, Barnes & Thornburg, Indianapolis, for appellant.

Julia Blackwell Gelinas, Julia F. Crowe, Locke Reynolds Boyd & Weisell, Indianapolis, for appellees.

## OPINION

ROBERTSON, Judge.

Smart Corporation appeals the summary judgment entered in favor of its former employee, Kathy Grider, in Grider's action for declaratory judgment that the noncompetition provisions of the parties' written Employment Agreement were unenforceable. We reverse, restating the dispositive issue involved as follows:

whether the blue pencil doctrine operates to delete the overly broad restriction regarding the geographic scope of the noncompetition provisions leaving the reasonable restrictions of the agreement enforceable?

## FACTS

The facts in the light most favorable to nonmovant Smart reveal that Smart is a California corporation which operates in most states in the highly competitive business of providing medical record copying services to hospitals and other health care providers. In 1989, Smart hired Grider as an assistant area manager for the state of Indiana. In 1990, Grider was promoted to the highest position in Indiana, that of Area Manager for the entire state.

In 1991, Smart and Grider entered into a written Employment Agreement which is the subject of this dispute. The geographic scope of Grider's responsibilities under the Agreement was limited to Indiana. However, the covenant not to compete, Section 4.6 of the Agreement, provided that Grider would not compete with Smart for three years after the termination of her employment anywhere in the United States. The noncompetition clause reads as follows:

Section 4.6—Agreement Not to Compete. The Employee hereby covenants and agrees that so long as she is either employed by the Company or for the term of this Agreement, and for the lesser of: (i) three (3) years after the Employee ceases to be employed by the Company or any affiliate or successor thereof; or (ii) so long as the Company or any affiliate or successor thereof carries on a like business to that presently conducted by the Company, the Employee will not, *in any county of any state in the United States of America where the Company or any affiliate or successor thereof then carries on a like business to that presently conducted by the Company in the County of Los Angeles, California*, to the extent permitted by applicable law, ... [compete with Smart] (Emphasis added.) Section 4.7 of the Employment Agreement provided that Grider would not solicit Smart's customers or employees for three years after the termination of her employment. Section 4.7 did not contain any language limiting the geographic scope of its application.

As Area Manager, Grider regularly spoke with, visited, and entertained Smart's customers in Indiana. Grider became familiar with Smart's pricing structures, strategies, representatives, needs, requirements, etc., in developing and maintaining good will with each of these customers on Smart's behalf. Similarly, Grider worked with, and became familiar with, Smart's employees in Indiana.

Grider was terminated from Smart on September 13, 1993. Less than a week later, Grider agreed with another former Smart employee to form Midwest Medical Copy Services, Inc. to compete directly with Smart. Since Grider's termination, twenty of Smart's accounts have transferred from Smart to Midwest representing approximately one-half of Smart's business in Indiana and more than $350,000.00 in annual revenue. In addition, Midwest signed accounts that Grider had been in the process of soliciting during her employment with Smart. Midwest has been operated almost exclusively on customers and employees appropriated from Smart in violation of the noncompetition provisions of the Employment Agreement.

## DECISION

Summary judgment is appropriate only if no genuine issues of material fact

exist and the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C); *Great Lakes Chemical Corp. v. International Surplus Lines Insurance Co.* (1994), Ind.App., 638 N.E.2d 847, 849. In reviewing a motion for summary judgment, this court must determine whether there is a genuine issue of material fact and whether the law has been correctly applied by the trial court. *Cloverleaf Apartments, Inc. v. Town of Eaton* (1994), Ind.App., 641 N.E.2d 665, 667. A trial court's grant of summary judgment is "clothed with a presumption of validity," and the appellant bears the burden of demonstrating the trial court erred. *Rosi v. Business Furniture Corp.* (1993), Ind., 615 N.E.2d 431, 434. However, this court must carefully scrutinize the trial court's decision to ensure that the losing party is not improperly denied his day in court. *Oelling v. Rao* (1992), Ind., 593 N.E.2d 189, 190.

■■■ The primary and overriding purpose of contract law is to ascertain and give effect to the intentions of the parties. *Piskorowski v. Shell Oil Co.* (1980), Ind.App., 403 N.E.2d 838, 844, *trans. denied.* If the intention of the parties can be gleaned from their written expression, that intention must be effectuated by the court. *Id.* The meaning of a contract is to be determined from an examination of all of its provisions, not from a consideration of individual words, phrases or even paragraphs read alone. *Harris v. Primus* (1983), Ind.App., 450 N.E.2d 80, 86, *trans. denied* (Action to determine enforceability of a non-competition covenant). Where possible, courts will construe contracts as being valid rather than void. *Glasgo v. Glasgo* (1980), Ind.App., 410 N.E.2d 1325, 1331, *trans. denied.* Contract construction is a question of law for the court. *First Federal Savings Bank v. Key Markets* (1990), Ind., 559 N.E.2d 600, 603–604.

■■■ Covenants not to compete are not favored in the law because they are in restraint of trade. *Hahn v. Drees, Perugini & Co.* (1991), Ind.App., 581 N.E.2d 457, 459. The burden is on the employer to demonstrate that the former employee has gained a unique competitive advantage or ability to harm the employer before such employer is entitled to the protection of a noncompetition covenant. *Id.* The ultimate determination as to whether a covenant not to compete is reasonable is a question of law for the court. *Id.*

■■■ A covenant not to compete is unreasonable when it is broader than necessary for the protection of a legitimate business interest in terms of the geographical area, time period, and activities restricted. *Fogle v. Shah* (1989), Ind.App., 539 N.E.2d 500, 503. A covenant not to compete must be sufficiently specific in scope to coincide with only the legitimate interests of the employer and to allow the employee a clear understanding of what conduct is prohibited. *Field v. Alexander & Alexander of Indiana, Inc.* (1987), Ind.App., 503 N.E.2d 627, 635, *trans. denied.* A former employer has a legitimate business interest in restricting its former employees from enticing away the employer's old customers. *Hahn,* 581 N.E.2d at 460.

■■■ In the present case, Smart and Grider would appear to agree that the language in Section 4.6 of the Employment Agreement as set above is overbroad to the extent that it restricts Grider from operating outside the geographic area of her responsibilities with Smart, that is, outside of Indiana. Similarly, Section 4.7 which contains no express geographic limitations is also overbroad to the extent that it may be interpreted to restrict Grider's solicitation of clients and employees outside of Indiana.

■■■ If the covenant as written is not reasonable, the courts may not create a reasonable restriction under the guise of interpretation, because to do so would subject the parties to an agreement they have not made. *Licocci v. Cardinal Associates, Inc.* (1983), Ind., 445 N.E.2d 556, 561. However, if the covenant is clearly separated into parts and some parts are reasonable and other are not, the contract may be held divisible and the reasonable restrictions may be enforced. *Id.* In such cases, unreasonable provisions are stricken and reasonable provisions are enforced under the blue pencil process. *Hahn,* 581 N.E.2d at 462. Blue penciling must be restricted to applying terms which already clearly exist in the contract and the court's

redaction of a contract may not result in the addition of terms that were not originally part of the contract. *Id.* Simply put, if practicable, unreasonable restraints are rendered reasonable by scratching out any offensive clauses to give effect to the parties' intentions. *Seach v. Richards, Dieterle & Co.* (1982), Ind.App., 439 N.E.2d 208, 215.

In *Hahn,* the employment agreement unreasonably restricted the former employee from dealing with the employer's former clients. The overbroad portion of the noncompetition clause was "surgically removed" by operation of the blue pencil process and the reasonable restrictions pertaining to the employer's present clients were held to be enforceable. 581 N.E.2d at 462. In *Welcome Wagon v. Haschert* (1955), 125 Ind. App. 503, 127 N.E.2d 103, the blue pencil doctrine was invoked to delete the overbroad term restricting the former employee from competing anywhere in the United States to enforce the remaining, reasonable restriction that the former employee refrain from competing in the city where she had been employed. 127 N.E.2d at 106. However, in *Ridgefield Park Transport v. Uhl* (S.D.Ind. 1992), 803 F.Supp. 1467, the court, applying Indiana law, held that where the language of the noncompetition clause was "a seamless web of conditions," blue pencil redaction was not possible because such an attempt would subject the parties to an agreement that lacked their mutual assent. 803 F.Supp. at 1470.

■ In the present case, the noncompetition clauses of the Employment Agreement plainly manifest the intention of the parties to protect Smart's legitimate interest in the clients developed and serviced by Grider on Smart's behalf by restricting Grider from appropriating the clients for herself for three years after her termination. Nevertheless, immediately after separating from Smart, Grider started her own business and proceeded to appropriate a substantial number of the very clients she had developed and serviced on Smart's behalf. Grider has never argued that she did not understand that this precise behavior was prohibited under the Employment Agreement. Nor has she asserted that the noncompetition provisions were unreasonable to the extent they prohibited her from appropriating, for three years, the clients she had developed and serviced on behalf of Smart. Grider has simply relied on her assertion that, since the noncompetition provisions were overbroad in their geographic scope, they may not be enforced to any extent.

■ In the present case, the parties' intentions may be enforced by redacting the overbroad geographic restriction from the Employment Agreement without adding any terms that were not originally part of the contract or subjecting the parties to a contract lacking mutual assent. The overbroad language may be "dragged and dropped in the shredder" as follows:

*Section 4.6—Agreement Not to Compete.* The Employee hereby covenants and agrees that so long as she is either employed by the Company or for the term of this Agreement, and for the lesser of: (i) three (3) years after the Employee ceases to be employed by the Company or any affiliate or successor thereof; or (ii) so long as the Company or any affiliate or successor thereof carries on a like business to that presently conducted by the Company, the Employee will not, ~~in any county of any state in the United States of America where the Company or any affiliate or successor thereof then carries on a like business to that presently conducted by the Company in the County of Los Angeles, California,~~ to the extent permitted by applicable law, . . . [compete with Smart]

Thus, as redacted, the geographic scope of the contract may be enforced "to the extent permitted by applicable law"[1] which could

**1.** We do not intend to sanction the use of such broad, "catch all" language in covenants not to compete. Obviously, since noncompetition agreements are not favored in law, more precise language should be employed to define the limitations of the restrictions. However, under the circumstances and posture of the present case, we will not hesitate to blue pencil the overbroad language and give effect to the "catch all" language to enforce the reasonable intentions of the parties as manifested by their written agreement.

reasonably include the extent of Grider's responsibilities under the agreement, that is, throughout the state of Indiana. Moreover, the language in Section 4.7 that does not specifically limit the geographic scope of the restriction need not be interpreted as overbroad so as to render the entire agreement void. *See Field*, 503 N.E.2d at 634; *JAK Productions, Inc. v. Wiza* (7th Cir.1993), 986 F.2d 1080, 1089 (A covenant that restrains the former employee from doing business with the former employer's customers, without specific limitation, will be interpreted to pertain to only those customers of the former employer existing at the time of the employee's termination).

In the present case, the intentions of the parties are readily ascertained by the plain language of the Employment Agreement. Grider was to be restricted from appropriating for herself the business she had developed and serviced on behalf of Smart—a legitimate business interest appropriately protected by a covenant not to compete. The blue pencil process, as applied herein, gives effect to the parties' reasonable intentions and does not add any terms to the agreement to which the parties did not manifest their mutual assent. Thus, the blue pencil process will operate to delete the overly broad geographic scope of the contract's noncompetition provisions and leave the reasonable restrictions enforceable. Therefore, the trial court's entry of summary judgment in favor of Grider is erroneous and we must reverse.

Judgment reversed.

BAKER, J., concurs.

STATON, J., dissents with separate opinion.

STATON, Judge, dissenting.

I respectfully dissent. The plain language of the contract at issue reveals that Smart intended to preclude Grider from competing against Smart anywhere in the United States. By means of the blue pencil doctrine, the Majority interprets this unreasonable geographical limitation as including only Indiana. To do so impermissibly rewrites the parties' contract. It is well settled that this court may not use the guise of interpretation to create a reasonable restriction from an otherwise unreasonable one; doing so subjects the parties to an agreement that they did not make. *Licocci v. Cardinal Associates, Inc.* (1983), Ind., 445 N.E.2d 556, 561, *reh. denied.*

As the Majority states, our courts have created the blue pencil doctrine so that those reasonable contract terms that are clearly divisible from any unreasonable terms may be enforced, thus giving effect to the parties' intentions. Op. at 83–84, citing *Seach v. Richards, Dieterle & Co.* (1982), Ind.App., 439 N.E.2d 208, 215. However, the plain language of the instant contract indicates that Smart, a corporation doing business on a nationwide basis, intended to eliminate Grider from competing with it anywhere it does business, i.e. nationwide. The fact that the limitation imposed by Smart is unreasonable under Indiana law does nothing to change Smart's intention in imposing it.

By redrafting the contract provision at issue, the Majority is assuming the needs and requirements of the parties as they entered into the agreement. For example, Smart's Indiana representatives may be based in metropolitan areas bordering other states, such as Hammond or Gary, and would thus very likely serve clients in Illinois and Michigan. The same would hold true for a sales representative in South Bend, Fort Wayne, Richmond or Evansville. Smart's intent to preclude Grider from competing on a nationwide basis, and not just in Indiana, may have been a poorly-drafted attempt to avoid this very problem. However, the role of this court is not to second-guess such considerations, which are exclusively within the province of the contracting parties. By striking the geographical limitation expressed in the contract and creating a legally reasonable limitation where one does not exist, the Majority in effect has become a party to the contract. *See Licocci, supra.*

The non-compete provision at issue contains an unreasonable geographical restriction that cannot be stricken without altering the essence of the original agreement. The trial court correctly determined that the provision is unenforceable, and its decision should be affirmed. For this reason, I dissent.